UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

DONTAE L. JOHNSON,

    *Plaintiff,*

    v.

CAPT. KEITH L. STITH, et al.,

    *Defendants.*
_____

Civil Action No. 14-5032

OPINION

**ARLEO, UNITED STATES DISTRICT JUDGE**

**I.   INTRODUCTION**

This matter is before the Court on Defendant Capt. Keith L. Stith's ("Stith") motion to dismiss Plaintiff Dontae L. Johnson's ("Plaintiff") Amended Complaint [Dkt. No. 21]. The motion was decided without oral argument pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1. For the reasons set forth herein, Plaintiff's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**II.   BACKGROUND**

This matter arises from Plaintiff's 2013 criminal trial for jury tampering, in which Plaintiff was acquitted. Plaintiff has brought a one count complaint alleging malicious prosecution claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") against two Hudson County detective officers involved in the investigation and prosecution of his case: (1) Detective Stith and (2) Detective Miguel Matos.

In the underlying trial in April 2011, Plaintiff's nephew, Quaheem Johnson, was the defendant in a criminal trial before the Honorable Joseph V. Isabella, J.S.C., in Hudson County. Am. Compl. ¶ 7, Dkt. No. 18. The jury consisted of twelve jurors. Id.

On April 28, 2011, Juror No. 9, Tiffany Thorpe, asked to be excused as a juror. Id. ¶ 9. Thorpe told Judge Isabella that she was uncomfortable serving for two reasons. First, she recognized a woman sitting in the gallery of the courtroom on Quaheem's side and believed the woman lived in her neighborhood. Wilson Cert. Ex. A at 5:3-19.[1] Second, she stated that while she was in a McDonald's restaurant on April 27, 2011, she overheard several people "talking about the jury." Id. at 5:20-21. She claimed that these individuals, whom she believed were members of Quareem's family, never ordered anything in the restaurant. Id. at 5:25-12. Thorpe was subsequently excused by Judge Isabella. Id. at 8:18-19, 10:19-21, 12:15-16.

After dismissing Thorpe, Judge Isabella interviewed the remaining jurors to determine whether they were still capable of rendering a fair verdict. Juror No. 4, Andre Heun, stated on the record that he was in the McDonald's with Thorpe, had overheard some individuals discussing the jury and the case, but was not intimidated and could continue to serve on the jury. Id. at 17:16-19:25. Heun later testified at Plaintiff's trial for jury tampering that he was excused from the Quaheem Trial after having a heart attack. Am. Compl. ¶ 14.

---

[1] In support of his motion to dismiss, Stith relies upon three documents, two trial transcripts from the Quaheem Johnson trial, and the criminal complaint issued against Plaintiff. See Wilson Cert., Dkt. No. 21-1. The Court may consider these undisputedly authentic documents, but not for the truth of the matters asserted therein. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007); Kellinger v. City of Englewood, No. 12-5724, 2013 WL 3443002, at *1 (D.N.J. July 9, 2013) Torres v. Township of North Bergen, No. 08-5890, 2010 WL 56043, at *5 (D.N.J. Jan. 5, 2010).

On May 4, 2011, Juror No. 2, Jamie Medina, also asked to be excused as a juror in the Quaheem Johnson trial.  Id. ¶ 15.  Medina, whom lived near the courthouse, based his request on an event that had occurred outside his home the previous day:

> I don't know if it's [Quaheem's] brother that, he's been here on every day of the case that wears a tie, was with two of his friends, walked right by me and father, and the brother looked at me, one of the friends looked at me with a smile, not a threatening smile, but acknowledgment smile that he knows whom I am.

Wilson Cert. Ex. B at 4:23-5:4.  Medina further stated that he assumed that one or more of the individuals could have been walking to their homes in "the Projects" and "a lot of these guys" knew Medina from the community.  Id. at 5:6-6:10.  Medina, however, testified during Plaintiff's trial that he was never intimidated or threatened by Plaintiff during the Quaheem Johnson trial. Am. Compl. ¶ 16.

After Media was excused, Judge Isabella declared a mistrial because there were insufficient jurors to render a verdict.  Id. ¶ 17.

Following the mistrial, an investigation into jury tampering ensued.  On May 5, 2011, Defendants Stith and Matos interviewed Medina regarding the encounter in front of his house that led to his excusal as a juror.  Id. ¶ 20.  No recorded statement from this interview was taken; however, the detectives reported that Medina had told them that on May 3, 2011, three men walked past his home and one of the men turned towards him and "smiled with a sinister look."  Id. ¶ 21. Plaintiff asserts that Defendants fabricated this story and it contradicted Medina's statement to Judge Isabella and his testimony at Plaintiff's criminal trial.  Id.

On May 9, 2011, Stith interviewed Thorpe.  Id. ¶ 26.  Stith did not record the interview, nor did he have Thorpe prepare a written and signed statement.  Id.  Instead, Stith prepared his

3

own report in which he claimed Thorpe identified Plaintiff as the reason Thorpe asked to be excused from the jury.  Id.  Again, Plaintiff asserts this was a fabrication.  Id.

On or about May 16, 2011, Matos retrieved a soundless video from the McDonald's Restaurant where Thorpe said she encountered the group of people discussing the trial.  Id. ¶ 28.  Plaintiff asserts the video does not show Plaintiff interacting with any of the jurors.  Id.

Following Defendants' investigation, on June 3, 2011, Plaintiff was arrested and charged with first degree corrupting or influencing a jury in the Quaheem Trial.  Id. ¶ 30.  He was held on $1,000,000 cash-only bail from June 3, 2011 until March 19, 2012, when his bail was reduced to $75,000 cash or bond bail.  Id. ¶¶ 56-60.  Bail was posted on or about April 16, 2012.  Plaintiff spent approximately 11 months in custody in a "maximum security" tier.  Id. ¶¶ 60-61.

After Plaintiff was arrested, the investigation continued.  On October 7, 2011, Matos interviewed Juror Huen.  Id. ¶ 31.  While Plaintiff does not provide any details regarding the alleged statement Huen gave on that date, Plaintiff asserts that the statement was contrary to what Huen told Judge Isabella on April 28, 2011, and Huen's testimony at Plaintiff's trial.  Id. ¶ 31.

Six months after Plaintiff was arrested on a criminal complaint, on December 6, 2011, Hudson County Assistant Prosecutor Michael D'Andrea presented the State's investigation to a Grand Jury.  Id. ¶ 33.  Before the Grand Jury, the State only presented testimony from Stith and the prosecutor in the Quaheem Trial.  Id. ¶ 34.  Plaintiff now alleges that Stith knowingly made a number of false statements in his testimony.  For example, Stith testified that he had personally retrieved the surveillance video from McDonald's.  Id. ¶ 35.  Additionally, Stith testified that Juror Thorpe had claimed that Plaintiff was one of three individuals whom had stood behind her in McDonalds and loudly discussed the Quaheem trial.  Id. ¶¶ 36-37.  Stith also falsely claimed that

Thrope did not want to give a statement or testify because she was afraid of retaliation by Plaintiff or his family.  Id. ¶ 39.

On October 15, 2013, the jury tampering case against Plaintiff proceeded to trial.  Both Heun and Medina testified and denied ever being intimidated or threatened by Plaintiff.  Id. ¶ 45.  Medina also testified that Plaintiff never looked at him or said anything to him when he walked past Medina's home, and further testified that he did not think that the man who smiled at him did so in a threatening or menacing way.  Id. ¶ 46.  In fact, no juror testified that he or she had been intimidated by Plaintiff.  Id. ¶¶ 52-53.

Subsequently, Plaintiff was acquitted of all charges on October 17, 2013.  Id. ¶ 65.  This action followed.

### III.    STANDARD OF REVIEW

Here, Stith argues both that this Court lacks subject matter jurisdiction over Plaintiff's claims pursuant to Rule 12(b)(1) and that Plaintiff fails to state a cause of action pursuant to Rule 12(b)(6).

As to Stith's contention that Plaintiff's Section 1983 and NJCRA claims are barred by the doctrine of Eleventh Amendment sovereign immunity, this argument is a challenge to this Court's subject matter jurisdiction and, therefore, is determined pursuant to Federal Rule of Civil Procedure 12(b)(1).  Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996).  Here, as Stith argues that the complaint on its face is insufficient to invoke the Court's subject matter jurisdiction, the Court applies the same standard as utilized in deciding a motion under Rule 12(b)(6).  Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).

Stith also offers argues Plaintiff's Complaint must be dismissed for failing to state a claim.  In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the court accepts as true all of

the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

IV.  **ANALYSIS**

Plaintiff brings suit against Stith in both his individual and official capacities under both Section 1983 and the NJCRA. Stith asserts, however, that he is immune from suit based on: (1) sovereign immunity; (2) absolute prosecutorial immunity; (3) absolute witness immunity; and (4) qualified immunity. He also claims Plaintiff has failed to state a cause of action for malicious prosecution.

**A. Sovereign Immunity**

It is well settled that the Eleventh Amendment's grant of sovereign immunity applies to Section 1983 claims brought against the States. See Quern v. Jordan, 440 U.S. 332, 345 (1979). Eleventh Amendment immunity also extends to certain actions against state agencies and departments so long as the state itself is the real party in interest. Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989). Similarly, the NJCRA has also been interpreted to grant immunity to "states and state officials acting in their official capacity." Estate of Lagano v. Bergen Cnty. Prosecutor's Office, 769 F.3d 850, 856 (3d Cir. 2014). In determining whether

sovereign immunity applies, the Court must consider: (1) the source of the funds that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. Fitchik, 873 F.3d at 659. The Eleventh Amendment does not preclude suits brought against state officials in their individual capacities, however, even if the challenged conduct was a part of their official responsibilities. Hafer v. Melo, 502 U.S. 21, 31 (1991). Therefore, if sovereign immunity applies, it would only bar claims brought against Stith in his official capacity.

It is well settled that County Prosecutor's Office Detectives, when performing investigative functions, are agents of State and are entitled to sovereign immunity for all claims brought against them in their official capacities under both Section 1983 and the NJCRA. See Beightler v. Office of Essex County Prosecutor, 342 F. App'x 829, 832-33 (3d Cir. 2009); Coleman v. Kaye, 87 F.3d 1491, 1500-02 (3d Cir. 1996); Pitman v. Ottehberg, No. 10-2538, 2015 WL 179392, at *6 (D.N.J. Jan. 14, 2015); Wright v. State 778 A.2d 443, 456-58 (2001); In re Camden Police Cases, Nos. 11–1315, 10–4757, 2011 WL 3651318, at *9 (D.N.J. Aug. 18, 2011). Thus, all claims against Det. Stith in his official capacity are dismissed.

### B. Absolute Immunity

Stith argues that he is entitled to absolute immunity for his testimony before the Grand Jury and at trial. The Court agrees. "The Supreme Court has unanimously held that grand jury witnesses, like trial witnesses, have 'absolute immunity from any § 1983 claim based on the witness' testimony.'" Cope v. Kohler, No. 12-5188, 2015 WL 3952714, at *5 (D.N.J. June 29, 2015) (quoting Rehberg v. Paulk, 132 S.Ct. 1497, 1506 (2012)); see also Moore v. Carteret Police Dep't, No. 13-943, 2014 WL 6978434, at *6 (D.N.J. Dec. 8, 2014); Small v. State, No. A-4113-13T4, 2015 WL 1057840, at *8 (N.J. App. Div. Mar. 12, 2015) ("As a witness testifying before a

7

grand jury, however, [the detective defendant] is entitled to absolute immunity."). Thus, Stith is entitled to absolute immunity for all statements made before the Grand Jury and at trial.

### C. Qualified Immunity

As to Stith's involvement in Plaintiff's case before Plaintiff was arrested, Stith argues his actions are subject to qualified immunity. The defense of qualified immunity is available for both Plaintiff's Section 1983 and NJCRA claims. See Newsome, 2014 WL 4798783, at *5; Williams v. New Jersey Div. of State Police, No. 10-3478, 2012 WL 1900602, at *15 (D.N.J. May 24, 2012).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity attaches if the official can demonstrate his or her conduct was "objectively reasonable." See Harlow, 457 U.S. 800, 818 (1982). "There are two prongs to the objective reasonableness inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful." Davis v. Malitzki, 451 F. App'x 228, 232 (3d Cir. 2011). If the answer to either question is "no," the officer is entitled to qualified immunity. See Pearson, 555 U.S. at 236. Whether a defendant is entitled to qualified immunity is a question for the court, not the jury, and should be decided early in the proceedings so that the defendant may avoid the burdens of litigation and thus enjoy the immunity to which he or she is entitled. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). The Third Circuit has cautioned, however, that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir.2009).

"It is well-established that the Fourth Amendment 'prohibits a police officer from arresting a citizen except upon probable cause." Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010). "Probable cause to arrest is present 'when the facts and circumstances within the arresting officer's knowledge [at the time of the arrest] are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" Livingston v. Allegheny Cnty., 400 F. App'x 659, 665 (3d Cir. 2010) (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788, 789 (3d Cir. 2000)) (alteration in original); see also Batiz v. Brown, No. 12-581, 2013 WL 1137531, at *3 (D.N.J. Mar. 14, 2013) ("The standard for probable cause is identical under federal and New Jersey law."). Although "a grand jury indictment . . . constitutes prima facie evidence of probable cause to prosecute," such evidence "may be rebutted by evidence that the [indictment] was procured by fraud, perjury or other corrupt means." Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989). In such a case, the Court must determine "whether a prudent officer would reasonably believe, based on the non-fabricated evidence, that the defendant committed the crime." Stolinski, 772 F. Supp. 2d at 644.

Here, Plaintiff alleges that there was no probable cause to arrest him for jury tampering and the only basis for the arrest were the false witness interview reports generated by Dets. Stith and Matos. Am. Compl. ¶ 20, 21, 26. Likewise, Plaintiff alleges that the indictment was procured by fraud and perjury. See id. ¶¶ 35-42, 50, 55. Plaintiff has sufficiently alleged that his constitutional rights were violated and that a reasonable officer would know that generating such false witness interview reports was unlawful.

Stith argues that even accepting Plaintiff's allegation that he falsified witness interview reports as true, there was still sufficient credible evidence for Plaintiff's arrest and thus he is entitled to qualified immunity. However, Defendant can point to no evidence apart from the

9

allegedly perjurious statements which would inculpate Plaintiff. Stated another way, absent the falsified identifications, there would be no probable cause to arrest Plaintiff. Therefore, qualified immunity does not apply.

### D. Failure to State a Claim

To state a malicious prosecution claim under Section 1983 and the NJCRA, Plaintiff must establish that: (1) Stith initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) Stith acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding. Halsey v. Pfeiffer, 750 F.3d 273, 297 (3d Cir. 2014).[2] Here, Stith claims that Plaintiff has not pled that either Stith acted maliciously or the proceeding was initiated without probable cause. The Court disagrees.

As set forth above, Plaintiff has properly pled that the criminal proceedings against Plaintiff were initiated without probable cause and with malice. See Am. Compl. ¶¶ 20, 21, 26, 35-42, 50, 55. Malice, in the context of a malicious prosecution claim, may include "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose" as well as a "defendant's reckless and oppressive disregard of plaintiff's rights." Stack Stackhouse v. Dow, No. 11-7554, 2015 WL 1321745, at *3 (D.N.J. Mar. 24, 2015). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). Here, Plaintiff alleges that Stith acted with reckless and oppressive disregard

---

[2] The elements of the common law tort of malicious prosecution under New Jersey are the same, except no deprivation of liberty need be shown. Harris v. Zyskowski, No. 12-7191, 2013 WL 6669186, at *6 (D.N.J. Dec. 18, 2013).

of Plaintiff's rights by manufacturing false witness reports.  See Am. Compl. ¶¶ 78-80.  Such allegations are sufficient to state a claim.

Thus, the Court finds Plaintiff has properly alleged a claim for malicious prosecution under Section 1983 and the NJCRA.  See Cope, 2015 WL 3952714, at *6; Lopez-Siguenza v. Roddy, No. 13-2005, 2014 WL 1298300, at *5 (D.N.J. Mar. 31, 2014); Coles v. Carlini, No. 10-6132, 2012 WL 1079446, at *12 (D.N.J. Mar. 29, 2012).

## V.  CONCLUSION

For the reasons set forth above, Stith's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.  All claims against Stith in his official capacity are dismissed with prejudice.  All claims arising from Stith's testimony before the Grand Jury and at trial are dismissed with prejudice.

An appropriate order shall issue.

/s Madeline Cox Arleo
**Hon. Madeline Cox Arleo**
**United States District Judge**